# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MICHAEL A. RIVERS,

        Petitioner,

v.                            Case No:  6:18-cv-203-Orl-78EJK
                                             (6:13-cr-87-Orl-40TBS)

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

THIS CAUSE is before the Court on Petitioner Michael A. Rivers' Amended Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate," Doc. 7) filed pursuant to 28 U.S.C. § 2255. Respondent filed a Response and a Supplemental Response to the Motion to Vacate ("Response," and "Supplemental Response," Doc. Nos. 14 & 17) in compliance with this Court's instructions. Petitioner filed a Reply, Addendum to the Reply, and Supplemental Replies to the Response and Supplemental Response (Doc. Nos. 32, 34, 36, & 39).

Petitioner asserts seven grounds in his Motion to Vacate. For the following reasons, the Motion is denied.

### I. PROCEDURAL HISTORY

A grand jury charged Petitioner by Second Superseding Indictment with conspiracy to commit wire fraud (Count One) in violation of 18 U.S.C. § 1349, wire fraud (Counts Two through Nine) in violation of 18 U.S.C. §§ 1343 and 2, conspiracy to commit money laundering (Count Ten) in violation of 18 U.S.C. § 1956(h), money laundering (Counts

Eleven through Eighteen) in violation of 18 U.S.C. §§ 1957(a) and 2, and aggravated identity theft (Counts Nineteen through Twenty-One) in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. (Criminal Case No. 6:13-cr-87-Orl-40TBS, Doc. 130.)[1] Petitioner entered an open plea of guilty to all counts before Magistrate Judge Thomas B. Smith. (Doc. 14-5.) Magistrate Judge Smith filed a Report and Recommendation, recommending that the plea be accepted and that Petitioner be adjudicated guilty of Counts One through Twenty-One. (Criminal Case, Doc. 159.) The Court accepted the plea and adjudicated Petitioner guilty. (Criminal Case, Doc. 173.) The Court sentenced Petitioner to a total 204-month term of imprisonment, consisting of concurrent 180-months terms for Counts One through Nine, concurrent 120-month terms for Counts Ten through Eighteen, and to two-year terms for Counts Nineteen, Twenty, and Twenty-One with these sentences running concurrently to each other but consecutively to the sentences for Counts One through Eighteen. (Criminal Case, Doc. 274.) Petitioner appealed, and the Eleventh Circuit Court of Appeals affirmed. (Doc. 14-4.)

## II. LEGAL STANDARD

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474

---

[1] Criminal Case No. 6:13-cr-87-Orl-40TBS will be referred to as "Criminal Case."

U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS[2]

## A.    Ground One

Petitioner asserts counsel rendered ineffective assistance by failing to conduct discovery. (Doc. 1 at 15.) In support of this ground, Petitioner complains that counsel (a) failed to investigate the indictment and challenge it, (b) failed to investigate the charges, (c) gave him only six pages of the 55,000 pages of discovery, (d) failed to file a motion for discovery to obtain favorable evidence withheld by the Government, (e) failed to request CJA funds for "contractual and business experts as well as medical experts" to impeach the Government's witnesses, (f) failed to "act on . . . written evidence to support dismissal of the indictment," and (g) failed to interview witnesses and told Petitioner that he could not contact witnesses without a court order. (*Id.* at 15-18.) Petitioner maintains that the potential witnesses he wanted to call included Joseph Nhumondo, Dorine Nalo, Paul Gaza, Adrian Beeson, South Africa VP Barclays Bank, Kenya Commercial Bank VP, M2, a mental health expert, and South American Bank representatives. (*Id.* at 19-22.)

Petitioner has not demonstrated either deficient performance or prejudice. Petitioner has not alleged that but for counsel's purported conduct, he would not have entered the plea and would have proceeded to trial. *See* Doc. 1 at 15-22. In fact, Petitioner only requests the Court to vacate the judgment and release him from prison. (*Id.* at 42-43.) In addition, Petitioner's contentions that counsel failed to investigate the indictment

---

[2] Respondent correctly argues that Petitioner's 28 U.S.C. § 2255 motion was not filed within the one-year limitation period. *See* Doc. 14. However, Petitioner sought an extension of time to file his § 2255 motion, and the trial judge granted the motion, giving Petitioner through February 5, 2018, to file his § 2255 motion. *See* Criminal Case, Doc. 335. Consequently, Petitioner is entitled to equitable tolling through February 5, 2018, based on the Court's extension of time. Petitioner initiated this action under the mailbox rule on February 4, 2018. (Doc. 1 at 44.) Therefore, the action is timely.

and charges, gave him only a few pages of discovery, failed to move for favorable evidence withheld by the Government, failed to request CJA funds, and failed to act on written evidence to obtain dismissal of the indictment are vague and conclusory. Vague, conclusory, or unsupported allegations cannot support a claim of ineffective assistance of counsel. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991). Petitioner has not demonstrated that the indictment was subject to dismissal, that the Government withheld favorable evidence, that experts were available or could have impeached the Government's witnesses, or that Petitioner's limited review of the discovery materials impeded his defense.

Furthermore, Petitioner's allegations are refuted by the record and documents submitted by Petitioner. For instance, Petitioner filed an email in which Petitioner's attorney, Andrew Chmelir ("Chmelir"), told Petitioner's wife/co-defendant to review a document with Petitioner because Petitioner did not "want any court related documents in his holding cell." (Doc. 7-1 at 20.) Thus, it appears that Petitioner did not want his attorney to give him the voluminous discovery materials. In other emails sent shortly before the scheduled trial, Chmelir told Petitioner's wife that he had not been provided contact information to interview any potential defense witnesses, that Petitioner had barred him "from contacting, interviewing or speaking with these potential witnesses[,]" and that he (counsel) had been "asking for a defense witness list since [his] initial involvement in the case." (*Id.* at 13, 17-18.) Consequently, Chmelir seemingly had not been given a witness list or contact information and had been precluded by Petitioner from interviewing some witnesses.

More importantly, at the plea hearing, the Court explained that Petitioner had the

right to call witnesses and to compel their attendance, if necessary, and that by entering

the plea, he would be waiving his right to do so. (Doc. 14-5 at 11.) Petitioner affirmed that

he understood this. (*Id.*). Petitioner also affirmed that no one had threatened or coerced

him to enter the plea, he had no complaints or concerns about his attorney, and he was

satisfied with his attorney's representation. (*Id.* at 24-25.) Petitioner further told the Court

that he had told the truth. (*Id.* at 25.) Petitioner's representations constitute "a formidable

barrier in any subsequent collateral proceedings. Solemn declarations in open court carry

a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Petitioner, therefore, has not demonstrated that counsel's performance was deficient or

that a reasonable probability exists that the outcome of the proceeding would have been

different but for counsel's purported failure to conduct discovery. Accordingly, ground one

is denied.

## B. Ground Two

Petitioner contends counsel rendered ineffective assistance by failing to prepare a

joint defense strategy.[3] (Doc. 7 at 23-24.) Petitioner asserts counsel refused to engage

---

[3] Petitioner complains that his wife's attorney, Charles Green ("Green"), took a $95,000 retainer and agreed to a joint defense. (Doc. 7 at 23.) Petitioner further alleges that Green used Chmelir "as a partner in order to separate the joint defense strategies. . . ." (*Id.*) Without providing any evidence, Petitioner maintains that Chmelir received "a healthy portion of the $95,000. . . ." (*Id.*)

Contrary to Petitioner's representations, the record establishes that the Court appointed Chmelir as CJA counsel to represent Petitioner at Petitioner's request and Chmelir represented him throughout the plea proceedings. *See* Criminal Case, Doc. Nos. 45 & 54; Doc. 14-5 at 2. Moreover, emails submitted by Petitioner evidence that Green emphatically denied that he represented Petitioner in any manner. (Doc. 7-1 at 11, 14, 19.) Finally, Petitioner clearly is speculating that Green gave a portion of the $95,000 retainer to Chmelir because Petitioner states in his § 2255 motion that Green "*likely* split a healthy portion with counsel Chmelir." (Doc. 7 at 29) (emphasis added). To the extent any of Petitioner's grounds of ineffective assistance of counsel are premised in any way

in a joint defense for him and his wife, and instead, sought to pit Petitioner's wife against him. (*Id.* at 24.)

Petitioner has not established deficient performance or prejudice. Petitioner has not explained what the joint defense was that he wished to pursue. Moreover, at the plea hearing, the Court advised Petitioner that he would be waiving his right to present a defense by entering the plea. (Doc. 14-5 at 11.) Petitioner affirmed that he understood this. (*Id.* at 12.) Petitioner further affirmed that he was entering the plea freely and voluntarily and told the Court that he did not have any complaints about his attorney and was satisfied with his representation. (*Id.* at 23-25.) Based on Petitioner's sworn representations, he chose to forego a "joint defense strategy" and enter the plea. Finally, Petitioner has not alleged that but for counsel's failure to prepare a joint defense, he would not have entered the plea and would have proceeded to trial. Accordingly, ground two is denied.

### C.    Ground Three

Petitioner asserts counsel rendered ineffective assistance by failing to pursue a favorable plea agreement. (Doc. 7 at 25.) In support of this ground, Petitioner maintains that counsel gave him two plea agreements from the Government but failed to review either offer with him. (*Id.* at 25, 27-28.) Petitioner contends he did not sign the first plea

---

on Green's actions, they are without merit because Green was not Petitioner's attorney and Petitioner knew this based on the emails Petitioner filed. *See* Doc. 7 at 30-31 (Petitioner complaining that Green coerced and coached Petitioner to enter the plea.); *see also* Doc. 7-1 at 11 (Petitioner's wife telling Green in an email that "we do not want to hear any more how Andy's [Petitioner's] attorney and [Green] is mine."); Doc. 7-1 at 17 ("Petitioner's wife asking Chmelir in an email why he had not told Petitioner earlier that he had made up his mind that Petitioner is guilty so Petitioner could have requested another attorney); Doc. 7-1 at 19 (Green advising Petitioner's wife in an email that "I will do nothing to defend [Petitioner] and anything I say will not be helpful to him at trial.").

agreement and instead modified it because it contained a false statement. (*Id.* at 25, 27.) Petitioner alleges that he does not know whether counsel gave the revised plea agreement to the Government or what the Government's response was to it. (*Id.*) According to Petitioner, he asked counsel to request an extension of time in January 2014 to develop a better plea agreement, but counsel instead asked the Court to schedule the case for trial. (*Id.* at 26.) Petitioner also contends that counsel did not conduct any discovery, which forced him to enter an open plea, and Green, acting with Chmelir, coerced him to enter the plea by advising him he would receive a sentence of less than five years. (*Id.* at 29-30.)

This claim is speculative and otherwise refuted by the record. It is purely speculation that the Government would have been willing to accept Petitioner's revisions to the first plea offer or would have offered Petitioner a better plea agreement had counsel sought an extension of time in January 2014. In addition, Petitioner does not explain what the Government's plea offers entailed or why he would have received a lesser sentence under those offers.

Furthermore, the record establishes that Chmelir engaged in plea negotiations, Petitioner was aware of this, and Chmelir reviewed the plea offers with Petitioner. At the February 18, 2014 status conference, Assistant United States Attorney ("AUSA") Christopher LaForgia told the Court that there had been extensive plea negotiations. (Criminal Case, Doc. 308 at 3.) At the plea hearing on March 20, 2014, the Court asked Petitioner's counsel whether the Government had made any plea offers to Petitioner. (Doc. 14-5 at 24.) In response, Chmelir advised the Court that there had been extensive negotiations and written plea offers made. (*Id.*) The Court asked Chmelir whether the

Government's offers were fully communicated to Petitioner. (*Id.*) Chmelir responded that he had communicated the offers at length to Petitioner and that a private investigator was present "for many of those conversations. . . ." (*Id.*) Petitioner did not refute counsel's representations and affirmed that he was aware of the plea offers and had rejected them. (*Id.*)

Petitioner further affirmed that he understood the maximum penalties he faced by entering the plea and that his sentence would not be determined until after the Presentence Investigation Report was completed. (Doc. 14-5 at 12-13, 16-17.) When asked whether he was satisfied with his attorney's representation and had any complaints about counsel, Petitioner did not express dissatisfaction with counsel nor did he indicate that counsel failed to review or advise him about the Government's plea offers. (*Id.*) Petitioner also never indicated that counsel had failed to conduct discovery.[4] Instead, Petitioner told the Court that he was satisfied with counsel's representation and had no complaints or concerns. (*Id.*)

From counsel's and Petitioner's representations, Chmelir sought a favorable plea offer, conveyed and explained all plea offers to Petitioner, and Petitioner rejected those offers. When he entered the plea, Petitioner knew the maximum penalties he faced and that his sentence would not be determined until the sentencing hearing. Petitioner, therefore, has not demonstrated deficient performance or that a reasonable probability

---

[4] To the extent Petitioner complains that counsel failed to conduct discovery, which caused him to enter the open plea, this allegation is refuted by emails submitted by Petitioner. Specifically, Chmelir explained in an email that he would be reviewing "the thousands of documents provided by the government" in preparation for trial and that Petitioner had not provided him with contact information to enable him to interview any potential defense witnesses. (Doc. 7-1 at 13.)

exists that the outcome of the proceeding would have been different but for counsel's performance. Accordingly, ground three is denied.

### D. Ground Four

Petitioner asserts counsel rendered ineffective assistance by threatening and abusing him. (Doc. 7 at 33-35.) According to Petitioner, Chmelir and Green "worked together in tandem to ause [sic] severe psychological harm to both Petitioner and his wife in order to distort, harass, threaten, abuse, and intimidate Petitioner and his wife." (*Id.* at 34.) In support of this ground, Petitioner references Green's email to Petitioner's wife wherein he characterizes Petitioner as a criminal, indicates he does not represent Petitioner, and tells Petitioner's wife he intends to "blast" Petitioner. *See id.*; *see also* Doc. 7-1 at 19.

Petitioner has failed to show deficient performance or prejudice. Petitioner has not asserted that but for counsel's performance, he would not have entered the plea and would have proceeded to trial. Moreover, from review of the emails submitted by Petitioner, Green advised his client, Petitioner's wife, to stop being influenced by Petitioner. Green's emails evidence that he told Petitioner's wife that, if necessary, he intended to present a defense to the detriment of Petitioner. Green had a duty to represent his client zealously and to give her advice about the case against her and possible defenses. Consequently, Green cannot be deemed deficient for expressing his beliefs to his client and advising her accordingly.

Furthermore, there is no evidence that Chmelir's representation of Petitioner was influenced in any way by Green. Instead, Chmelir's emails establish that his perceptions

and advice to Petitioner were premised on Petitioner's actions and the overwhelming evidence against Petitioner. For instance, Chmelir stated:

> [Petitioner] has not given me a strategy. He cannot offer me a plausible explanation for the [sic] all of the alleged acts of deceit/fraud. My strategy can only be based on facts or evidence presented to the jury. [Petitioner] does not want to testify on his own behalf. The evidence against him is overwhelming.

> * * *

> Please do not send me anymore ridiculous emails. My patience for anything other than focused discussions on a trial defense have been exhausted. I cannot change the fact that the evidence of guilt is overwhelming – this has been repeated to [Petitioner] since the inception of the case. My personal feelings are irrelevant. [Petitioner's] concerns should be based on how the jury will perceive the evidence and nothing more. I will defend [Petitioner] to the best of my ability given the significant evidence adduced against him, the fact that he refuses to testify in his own defense[,] and the absence of any defense witnesses that are available to speak with me. I gave [Petitioner] another 3 hours of time today. It would be unethical and would constitute malpractice for me to chose [sic] to avoid and ignore the incriminating evidence as [Petitioner] has suggested we do.

(Doc. 7-1 at 16-17.) Therefore, Chmelir considered the evidence against Petitioner and gave him advice based on the evidence.

Finally, at the plea hearing, Petitioner affirmed that no one had used threats, duress, or intimidation to get him to enter the plea. (Doc. 14-5 at 23.) Petitioner also affirmed that he was satisfied with his attorney and told the Court he did not have any complaints or concerns about counsel. Accordingly, ground four is denied.

## E.    Ground Five

Petitioner asserts counsel rendered ineffective assistance by failing to prepare for trial. (Doc. 7 at 36.) In support of this ground, Petitioner complains that counsel failed to conduct discovery and investigate viable defenses and discounted Petitioner's factual

explanation of the charges. (*Id.*) Petitioner also contends that he wished to testify, but counsel failed to prepare him to do so. (*Id.* at 37.)

Petitioner has not demonstrated deficient performance or prejudice. Petitioner does not assert that he would have proceeded to trial but for counsel's purported failure to prepare for trial. *See* Doc. 7 at 36-37. Petitioner also has not explained what testimony he would have provided had he testified or what defense he would have presented if he had gone to trial. Moreover, Chmelir received more than 55,000 pages of discovery from the Government and noted in an email that he intended to review those documents in preparation for trial. Chmelir further indicated that Petitioner said he did not want to testify and failed to provide Chmelir with the contact information of any potential witnesses. (Doc. 7-1 at 13, 16.) Consequently, Chmelir did conduct discovery and prepare for trial. Finally, at the plea hearing, Petitioner affirmed he understood that he had the right to testify, call witnesses, and present defenses. Petitioner acknowledged that he would be waiving these rights by entering the plea. (Doc. 14-5 at 11-12.) Petitioner further denied that he had any complaints or concerns about counsel's representation and said he was satisfied with counsel. Petitioner's representations, therefore, refute this ground. Accordingly, ground five is denied.

### F.     Ground Six

Petitioner maintains he received ineffective assistance because Green improperly recommended to the Court that Chmelir be appointed to represent Petitioner. (Doc. 7 at 38, 40.) According to Petitioner, Green and Chmelir "maintained joint financial interests" and "Chmelir, appointed by the Court, positioned Petitioner to be left in Green's destructive wake and caused Petitioner to be harmed significantly by . . . Green. . . ." (*Id.*

at 38, 39.) Petitioner speculates that discovery would establish that Chmelir received financial payments from Green, which caused a conflict of interest. (*Id.* at 38, 40.)

As explained by the Eleventh Circuit Court of Appeals:

> A defendant "may waive this conflict of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary." *United States v. Ross,* 33 F.3d 1507, 1524 (11th Cir. 1994). Absent such a waiver, "a defendant is entitled to representation free of actual conflict." *United States v. Khoury,* 901 F.2d 948, 968 (11th Cir. 1990). "A speculative or hypothetical conflict," however, "does not violate the Constitution." *Id.* A defendant must show that his lawyer "actively represented conflicting interests," and that "the actual conflict had an adverse effect upon his lawyer's representation." *Id.* (quotation marks omitted). He must be able to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interest." *Id.; see also United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir. 1983) (stating that a defendant "must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between alternative courses of action"; otherwise "the conflict remain[s] hypothetical").

*United States v. Rahman*, 647 F. App'x 955, 956–57 (11th Cir. 2016).

Petitioner has not demonstrated that Chmelir had an actual conflict of interest or that the alleged conflict had an adverse effect on Chmelir's representation. Petitioner merely speculates that Green paid Chmelir part of the retainer given to Green. Furthermore, contrary to Petitioner's contention, Petitioner's retained attorney, John Benford, requested the Court to appoint Chmelir as CJA counsel. *See* Criminal Case, Doc. Nos. 45, 54, 297. There is no indication that Green sought to have Chmelir appointed. In addition, from the emails submitted by Petitioner, Petitioner knew that Green was not representing him. Moreover, Petitioner denied that anyone had coerced or threatened him to enter the plea and affirmed that he was satisfied with Chmelir's representation and had no concerns or complaints about counsel's representation.

Petitioner, therefore, has not established deficient performance or prejudice. Accordingly, ground six is denied.

### G.    Ground Seven

Petitioner contends that the Court lacked subject matter jurisdiction because the indictment was subject to dismissal pursuant to Rule 6(d) of the Federal Rules of Criminal Procedure. (Doc. Nos. 7 at 14; 9 at 4-22.) In support of this ground, Petitioner asserts that AUSA LaForgia and Daniel Eckhart were unauthorized to participate in the grand jury proceedings because they had not taken the requisite oath of office. (Doc. 9 at 5.) Petitioner notes that he requested the AUSAs' oaths of office from the Executive Office for United States Attorneys ("EOUSA") and none were located. (Doc. 9 at 1-10.) Petitioner submitted copies of the responses he received from the EOUSA, dated November 29, 2017, January 25, 2018, May 29, 2018, and October 9, 2018, indicating that there were no responsive records for AUSA LaForgia and Eckhart.[5] (Doc. Nos. 9 at 21; 32-1 at 1-8.) Petitioner, however, notified the Court in his Supplemental Reply that his wife received correspondence from the EOUSA on approximately August 6, 2019, that included AUSA Eckhart's and LaForgia's appointment affidavits signed respectively on November 18, 2002, and November 21, 2011. (Doc. 36 at 1.) Petitioner does not concede that the affidavits are authentic. (Doc. 39.)

Before an AUSA takes office, he or she is required to take an oath to execute faithfully his or her duties. 28 U.S.C. § 544. Rule 6(d) limits the persons who may be present while the grand jury is in session. Fed. R. Crim. P. 6(d). Government attorneys

---

[5] The October 9, 2018 responses indicate that "records of former employees [are] not maintained by EOUSA. Subject is former employee." (Doc. 32-1 at 1, 3.)

are included in the persons who may be present. *Id.* Rule 6(d) serves "'to ensure that grand jurors, sitting without the direct supervision of a judge, are not subject to undue influence that may come with the presence of an unauthorized person.'" *United States v. Mechanik*, 475 U.S. 66, 70 (1986) (quoting *United States v. Mechanik*, 735 F.2d 136, 139 (4th Cir. 1984), *aff'd in part, rev'd in part*, 475 U.S. 66). Consequently, violations of Rule 6(d) may warrant dismissal of the indictment if the issue is raised prior to the commencement of trial. *See Mechanik*, 475 U.S. at 69-70. However, where the defendant has been convicted, "any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Mechanik*, 475 U.S. at 70; *see also United States v. Hansel,* 70 F.3d 6, 8 (2d Cir. 1995) ("[A]ny error in the grand jury proceedings must be considered harmless in light of Hansel's guilty plea.").

Petitioner has not established a violation of Rule 6(d). Petitioner admits that his wife received AUSA Eckhart's and LaForgia's appointment affidavits, signed prior to the grand jury proceeding, from the EOUSA. Although Petitioner contests the authenticity of the documents, it appears that AUSA LaForgia's and Eckhart's participation in the proceeding did not violate Rule 6(d). More importantly, Petitioner knowingly and voluntarily entered a guilty plea. Therefore, any error in the grand jury proceeding connected with the Second Superseding Indictment was harmless beyond a reasonable doubt. Accordingly, ground seven is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 7) is **DENIED,** and this case is **DISMISSED** with prejudice**.**

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:13-cr-87-Orl-40TBS and to terminate the motions (Criminal Case, Doc. 336) pending in that case.

4. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[6] Accordingly, a Certificate of Appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida on November 7, 2019.

WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[6] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 11(a).

16