**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**CASE NO.  13-CR-87**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MICHAEL RIVERS,

      Defendant.

_____/

**DEFENDANT MICHAEL RIVERS'S RULE 60(B)(4) AND 60(B)(6) MOTION TO RECONSIDER, MOTION TO DISMISS INDICTMENT, SET ASIDE (VACATE) GUILTY PLEA AND JUDGMENTAND SENTENCE FOR LACK OF SUBJECT MATTER JURISDICTION AND REQUEST FOR EVIDENTIARY HEARING**

For this Motion the Defendant **MICHAEL RIVERS** ("Mr. Rivers") states:

### I.      PROCEDURAL/HISTORICAL BACKGROUND[1]

1. On or about April 17, 2013 Mr. Rivers was indicted in this case on several counts of fraud and money laundering. [D.E. 20].

2. AUSAs Christopher LaForgia ("AUSA LaForgia") and Daniel Eckhart ("AUSA Eckhart") were his assigned federal prosecutors.

3. On March 20, 2014, Mr. Rivers entered a plea of guilty. [D.E. 157].

4. On November 20, 2014, Mr. Rivers was sentenced to 204 months of imprisonment followed by three years of supervised release (and other non-pertinent sentence conditions).

5. On November 26, 2014, Mr. Rivers directly appealed his sentence and judgment. [D.E. 277].

---

[1] The procedural background can be confusing because of multiple pot-conviction filings in the criminal and civilian cases involving several appeals.  The undersigned has attempted to lay them out for ease in reading.

6. On July 25, 2016, the Eleventh Circuit Court of Appeals affirmed the sentence and judgment of the lower court. [D.E. 328].

7. Mr. Rivers timely sought certiorari from the United States Supreme Court which was denied on November 28, 2016. [D.E. 332].

8. Mr. Rivers then made numerous requests to the government under the Freedom of Information Act ("FOIA"). Based on responses received therefrom he learned that the AUSAs in this case did not have legal authorization to act as representatives for the United States of America in federal criminal proceedings against him.

9. On February 7, 2018, Mr. Rivers filed a motion to vacate his sentence pursuant to 28 U.S.C. §2255. [D.E. 336].

10. On February 21, 2018, Mr. Rivers also filed a motion for relief from judgment pursuant to Rule 60(b) and (d). [D.E. 337].

11. On March 6, 2018, the Court, in Mr. Rivers' civil motion to vacate suit (Case No.: 6:18-cv-203-ORL), ordered Mr. Rivers to file an amended motion pursuant to 28 U.S.C. §2255. [D.E. 4].

12. On May 4, 2018, in Mr. Rivers' civil motion to vacate suit (Case No.: 6:18-cv-203-ORL), Mr. Rivers, per court order, filed his amended motion pursuant to 28 U.S.C. §2255. [D.E. 7].

13. On May 22, 2018, the Court denied Mr. Rivers' motion for relief from judgment Under Rule 60 stating that Mr. River's must have presented this claim in conjunction with his other claims in his motion pursuant to 28 U.S.C. §2255 prior to including it in a Rule 60 motion. [D.E. 338].

14. On June 12, 2018, Mr. Rivers filed his motion for reconsideration of the order denying relief from judgment [D.E. 340].

15. On June 25, 2018, the Court entered an order denying Mr. Rivers' motion for reconsideration. [D.E. 341].

16. On July 31, 2018, in Mr. Rivers' civil motion to vacate suit (Case No.: 6:18-cv-203-ORL), the Court noted that after filing the original Rule 60 motion and before the Court's order denying that motion, Mr. Rivers *did* raise his Rule 60 claim within his amended motion pursuant to 28 U.S.C. §2255. The Court granted Mr. Rivers' motion for leave to amend and noted that the amended motion will be taken into consideration. [D.E. 13].

17. On November 7, 2019, this Court entered an order denying his motion to vacate sentence pursuant to § 2255.  [D.E. 344].

## II.     SUMMARY OF THE ARGUMENT

AUSAs LaForgia and Eckhart did not *complete* the AUSA/ Special Attorney certification process and as such, they were *not* proper representatives of the United States government in the prosecution of Mr. Rivers, and Article III standing did not exist. Without Article III standing, there was never subject matter jurisdiction over Mr. Rivers' prosecution. Mr. Rivers' conviction (guilty plea and adjudication) should be vacated, his indictment dismissed and he should be released from custody forthwith.

As such, under Rule 60(b)(4) and 60(b)(6) of the Federal Rules of Civil Procedure and upon this motion for reconsidertion, Mr. Rivers seeks to have his judgment declared null and void on the grounds that the Assistant United States Attorneys assigned to this case – AUSA Christopher LaForgia and AUSA Daniel Eckhart - did not have their appointments certified and thus were not duly authorized as federal prosecutors pursuant to federal law when they went

before the grand jury to seek Mr. Rivers's indictment and thereafter served as his prosecutors and there was no subject matter jurisdiction over Mr. Rivers.

### III.   MEMORANDUM OF LAW

Subject matter jurisdiction cannot be waived, it can be raised at any time. Mr. Rivers' claim is neither untimely nor procedurally barred. A claim that a court lacks subject matter jurisdiction "to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002). Mr. Rivers acknowledges that the Eleventh Circuit has apparently reached a contrary conclusion, *see, e.g., Williams v. United States*, 383 F. App'x 927, 929 (11th Cir. 2010), however, this Court is bound to follow the law as set forth by the United States Supreme Court. *See, e.g., McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (Recognizing that Supreme Court precedent binds all circuit and district courts). This Court should follow *Cotton* and find that because the district court lacked subject matter jurisdiction to hear his case, his claim herein is not subject to dismissal as untimely and cannot be denied as procedurally barred. *See Cotton*, 535 U.S. at 630, 122 S. Ct. at 1785.

As a result of AUSA LaForgia and Eckhart violating rules 6(d) and 6(e) of the Federal Rules of Criminal Procedure by procuring an indictment and prosecution without being duly authorized to represent the United States government, this Court lacked subject matter jurisdiction over Mr. Rivers. A "challenge to the court's subject matter jurisdiction *can* be raised at any time." *Quejada v. United States*, No. 16-23002-CIV, 2017 U.S. Dist. LEXIS 116160 (S.D. Fla. July 24, 2017). Even if a defendant enters an unconditional plea of guilty, challenges as to subject matter jurisdiction courts cannot be waived. *United States v. Betancourth*, 554 F.3d 1329 (11th Cir. 2009); See also *Courtney v. United States*, No. 17-80465-Civ-MARRA), 2017 U.S. Dist. LEXIS 73576 (S.D. Fla. May 12, 2017). This motion is timely as the Federal Rules of Civil

4

Procedure make clear that "a motion under Rule 60 (b) must be made within a reasonable time[2]."

Fed. R. Civ. P. (c) (1).

  a) **How one becomes a recognized federal prosecutor – Step 1.**

  In order to represent the United States of America, an attorney must be a United States Attorney, Assistant United States Attorney, or a Special Attorney[3]. More specifically, under 28 U.S.C.S. § 542, "The *Attorney General* may appoint one or more Assistant United States Attorneys in any district when the public interest so requires." Every AUSA "is subject to removal by the Attorney General." *Id*. As for Special Attorneys, 28 U.S.C.S. § 543 states that "the Attorney General may appoint [special] attorneys to assist United States attorneys when the public interest so requires." Similarly, these Special Assistant United States Attorneys "are subject to removal by the Attorney General." *Id*. There is no limitation as to what duties the appointees—Assistant United States Attorneys and Special Attorneys—may perform. *United States v. Allred*, 867 F.2d 856 (5th Cir. 1989). Furthermore, an appointee can only be appointed in the civil service by either the President, a court of the United States, *the head of an Executive Agency*, or the Secretary of a military department. 5 U.S.C. § 2104.

  Specifically, under 28 U.S.C.S. § 515, one who becomes a specially appointed attorney by the Attorney General may conduct "any kind of legal proceeding, civil or criminal, *including grand jury proceedings* and proceedings before committing magistrates, *which United States attorneys are authorized by law to conduct*." See also *United States v. Wrigley*, 520 F.2d 363 (8th Cir. 1975); *United States v. Cobban*, 127 F.713 (C.C.D. Mont. 1904). Essentially, a Special Attorney has the same broad authorizations as do Assistant United States Attorneys.

---

[2] The rules *only* impose a strict one-year statute of limitations for subsection (1), (2), and (3). Regardless, this motion would *still* fall within the statute of limitations as this Court entered an order denying his motion to vacate sentence pursuant to 2255 on November 7, 2019.  [D.E. 344].
[3] These are not mere "titles", they are words of art.

Additionally, and particular to Special Attorneys, 28 U.S.C.S. § 515 provides that all Special

Attorneys *shall* take an oath required by law. *Prior to taking office*, all attorneys appointed to

represent the United States of America are required to "take an oath of office to execute

faithfully his duties." 28 U.S.C.S. § 544. After the oath is executed, there is another essential

step, a process that must be followed in order to *certify* each appointment. That process is

described below.

> b) **How one becomes a recognized federal prosecutor – Step 2.**

The Executive Offices of the United States Attorney ("EOUSA") follows the precise

following steps that must be followed in order to have the appointments of incoming,

transferring, or specially assigned attorneys properly certified:

> 1. [The appointee] must execute an Oath of Office ("Oath") to protect the constitution of
>
> the United States.  That Oath must be notarized.
>
> 2. The executed Oath must be sent to the EOUSA within 14 days of execution.
>
> 3. If the execution is properly done, the EOUSA then issues a *certification* of the
>
> appointment with a corresponding certification date.  At this point in time, the AUSA
>
> becomes properly authorized to represent the United States of America.

Framed differently, if the Oath was not sent to the EOUSA and a certification of

appointment was not issued, the attorney has *not* been properly authorized to act as a government

prosecutor. It is irrelevant if an attorney executed their Oath of Office, framed it and hung it over

their desk[4].

> c) **How and where these appointment-certification records are stored.**

---

[4] There is good reason for this procedure, without which, any United States Attorney, or assistant could simply "deputize" any lawyer and bestow prosecutorial powers upon him, her or them.

Following the above instructions, the Oath is sent to the EOUSA for the certification of appointment, and the corresponding date of certification and confirmation are stored at the EOUSA or a designated storage facility for preservation.  Under 5 U.S.C. §2906 "the oath of office taken by an individual under subsection 3331 of 5 U.S.C. 331 shall be delivered by him to, and preserved by, the House of Congress, agency, or court to which the office pertains." Here, the "agency" refers to the EOUSA. Upon information and belief, the EOUSA records are initially maintained on-site, but later in the National Archives of Records in a digitally stored fashion.

Mr. Rivers conducted not one but two searches for the certifications for both AUSAs at the EOUSA, requesting:  copy of the Oath; a certification of appointment and confirmation of authority; and date(s) of certification. He then repeated the search requests at the National Archives of Records.  No records were found. He then repeated the search requests for two federal storage facilities.  One came back with old Oaths but with no certification of appointments, covering the corresponding dates.

### d)  What happens when a federal prosecutor acts ultra vires?

In *United States v. Pignatiello,* 582 F.Supp. 251 (D. Colo. 1984),  a Special Assistant United States Attorney executed and submitted an oath of office three weeks after a grand jury called its first witness. The Defendant claimed the United States Attorney was in violation of Rules 6 (d) and Rule 6 (e) of the Federal Rules of Criminal Procedure, as well as 28 U.S.C. 544. *Id*. Noting that this was a case of first impression, the court determined that "the only appropriate remedy for this type of violation, at this stage of the proceedings, was the dismissal of the indictment."                                                                                                        *Id*.

In *United States v. Providence Journal Co.,* 485 U.S. 693 (1988)*,* special prosecutors were

appointed *by the federal court* to pursue a contempt action against a newspaper company. The special prosecutor filed a petition for writ of certiorari without *any* authorization from the Solicitor General. *Id*. The Court held that the special prosecutor was not authorized to represent the United States before the Supreme Court because he *never* received authorization by the Solicitor General. Therefore, there was no "proper representative of the Government as a petitioner in this criminal prosecution." *Id*.  The Supreme Court dismissed the writ of certiorari for lack of jurisdiction. *Id*. See also *United States v. Navarro*, 972 F. Supp. 1296 (E.D. Cal. 1997) (the court determined that because an attorney was not authorized to represent the United States government, the United States never appeared and Article III standing did not exist.)

In *United States v. Forman,* 71 F.3d 1214 (6th Cir. 1995), an attorney who prosecuted criminal tax cases for the United States Justice Department was convicted of federal criminal contempt for copying his office mate's case file—which contained information, on a criminal case, about a crime head's grand jury proceeding. The attorney then delivered the information to the crime head's associates. *Id*. On appeal, the court reversed the defendant's conviction, determining that he was not an authorized attorney for the government under Fed. R. Crim. P. 54 (c) because the rule "requires some level of official delegation or assignment." *Id*.  Thus, the court determined that the defendant did not come within the terms of Rule 6 (e) (2) because he was *never* assigned to work on his office mate's case in "any official capacity." *Id*. Additionally, the court notes that "the government failed to demonstrate that the Attorney General in any way delegated or assigned to Forman the authority to work on the case." *Id*. The court reversed Forman's conviction for criminal contempt. *Id*.

## IV.   ARGUMENT

An evidentiary hearing is necessary if the government does not concede that AUSAs LaForgia and Eckhart were not *fully* certified *after* their appointments. Respectfully, the government has overlooked all of the stages of the procedure for an AUSA to have prosecutorial authority and cannot overcome this defect.  The government has yet to counter that the *three-step process* for authorization was followed and certifications properly obtained. This last, "overlooked procedure" is instrumental to the certification process and to the integrity of the judicial system or it would not be there. It's there for a reason, plain and simple.

Mr. Rivers conducted two detailed searches for both AUSA LaForgia and Eckhart at the EOUSA and specifically requested a copy of their oaths of office, certifications of appointment/confirmation of authority, and dates pertaining to said certifications. No records were found. The search request was repeated at the National Archives of Records. Again, no records were found. Once again, the search request was repeated at two federal storage facilities. Thereafter, one request was returned with *only* two old Oaths pertaining to AUSA LaForgia and Eckhart. But no certification of appointment was found. That is an essential element to the authority.

In August of 2019, after Mr. Rivers filed an addendum to his §2255 petition, Mr. Rivers' wife received an email from the EOUSA on an e-mail address she had not used in nearly a year. The email included the same two old Oaths of Office Mr. Rivers had found a year earlier. This email was sent almost nine months after the results of Mr. Rivers' third search of the EOUSA records were received.  The EOUSA stated that this was a partial result and no other records were found. The government had previously asserted that because the Oaths were found, this was evidence that the two former AUSAs were properly authorized at the time.  This conclusion is completely misplaced. Merely signing or having an Oath does not correlate with being *certified*

*and/or authorized*. A certification of appointment with the corresponding dates—the most critical document to confirm true authorization—were never found because they don't exist, because it never happened. Moreover, and last, upon information and belief, the notaries who *notarized the Oaths* did not have special authority granted to them by the United States Attorney General to certify these appointments, which is also clearly required by statute. Either way, or by both ways, the AUSAs were acting without due authority. There is no such concept as "provisional deputization" either as the government seems to argue.

Without being *properly* certified, AUSA LaForgia and Eckhart were not authorized to represent the United States of America by seeking an indictment from the grand jury, nor to prosecute Mr. Rivers at the district court level. Because of this crucial defect, the district court had no subject matter jurisdiction over Mr. Rivers.

## V.    **CONCLUSION**

Just like a civilian who graduates from the police academy but does not get sworn in, cannot don a police uniform pin a "look-alike" badge on his chest, make an arrest, and book his prisoner at the local jail, neither AUSA LaForgia nor Eckhart were authorized to seek an indictment from the grand jury or pursue any prosecution within the district court.  Thus, the district court had no jurisdiction over Mr. Rivers.  The only relief possible for a jurisdictional defect of this nature is to dismiss the underlying indictment and subsequently the case. When a person is arrested and prosecuted by an individual who is not a duly authorized representative of the United States government and the consequence is a 204-month sentence that is hardly a harmless error.

## LOCAL RULE

Pursuant to the local rules of this district, undersigned counsel certifies that her associate,

Richard J. Diaz, Esq.  conferred with government counsel in in a good faith effort to resolve the

matters contained herein and the government opposes the motion.

WHEREFORE, Defendants pray this Honorable Court grant the relief requested herein.

Respectfully submitted,

SUSY RIBERO-AYALA, P.A.
201 Alhambra Circle, Suite 1200
Coral Gables, Florida   33134
Telephone:      (305) 854-4711
SRA@ralawmiami.com

By:   /s/ Susy Ribero-Ayala, Esq.
Susy Ribero-Ayala, Esquire
Florida Bar No.  993352

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically

filed via CM/ECF and served upon all parties of record this 9th day of April 2020.

By:   /s/ Susy Ribero-Ayala, Esq.
Susy Ribero-Ayala, Esquire

11